SHORTESS, Judge.
This suit was brought by Ronald J. Roe, doing business as Transcription Unlimited (plaintiff), against the State of Louisiana, Division of Administration (defendant). It asserts that defendant advertised for bids for the furnishing of dictation[1] services for Charity Hospital in New Orleans (CHNO); that plaintiff’s was the “lowest, responsible” bid; that defendant improperly sought to cancel the [bid] proposal after the opening of the bids; and that plaintiff is entitled to be awarded the contract. By two amending and supplemental petitions plaintiff alleges damages in the form of loss of profits[2] and asserts that the contract entered into for the interim between the date of expiration of the previous year’s contract and the date that a new bid proposal (with revised specifications) resulted in an award which was “contrary to law and regulations.” No damages distinct from the rejection of plaintiff’s bid are alleged as a result of the interim contract, *476 and plaintiff does not assert that he should have been awarded a contract for the interim services. In a third supplemental and amending petition, plaintiff names Hugh M. Carleton and Sharilyn Livingston, both employees of the Division of Administration, defendants.
After trial on the merits, the trial court rendered judgment for plaintiff and against defendant for $42,215.25 in lost profits. Defendant appeals, specifying error in the trial court’s determination of improper rejection, in the trial court’s finding that plaintiff should have been awarded the contract, in the award of lost profits, and in the denial of the individual defendant’s peremptory exception of prescription.
CANCELLATION OF THE BID SOLICITATION
A bid solicitation may be rejected “only if it is determined in writing by the chief procurement officer or his designee that such action is taken in the best interests of the state.” LSA-R.S. 39:1599. The discretion vested by this statute is limited only by the requirement that the determination be made “in a non-arbitrary manner, for valid reasons.” Coney v. State, 385 So.2d 368, 372 (La.App. 1st Cir.1980).
Defendant mailed a solicitation for bid proposals to thirteen prospective bidders on February 18, 1982. Only two bidders responded. Plaintiff submitted a bid of “$9.00 per thousand [words]” and “.30<t” for any additional copies,[3] and indicated that the bid price was conditioned[4] upon plaintiffs performance of the contract services (through the use of a facsimile (fax) terminal at CHNO and a fax terminal at plaintiff’s business) in Alexandria, Louisiana. Plaintiff’s proposal envisioned dictation by telephone from doctors at CHNO to plaintiff’s Alexandria operations, transcription of the dictated material upon receipt, and then returning the transcribed material to CHNO via the fax terminal.
The incumbent contractor, Dictation, Inc. (Dictation), submitted a bid including a graduated pricing schedule (dependent upon word usage) varying between $10.79 and $11.35 per thousand words, with no additional cost for copies.[5]
Sharilyn Livingston, a purchasing agent with the Division of Administration, forwarded the bids to Edward L. Stiegler, Director of Purchasing at CHNO, requesting that he “please review these bids and advise.” In addition, Livingston’s correspondence requested that Stiegler review the bid specifications and indicated that if Stiegler wished “to have this file rebid with revised specifications, please let me know.” The record reveals that the specifications had not been revised in over ten years.
Stiegler forwarded copies of the bids to those departments at CHNO requiring dictation services: medical records, radiology, and histopathology. Correspondence to Stiegler dated April 1, 1982, from the radiology department indicated an inability to determine which bid was lower due to plaintiff’s charge for additional copies.
At this juncture we note that early in the trial, during cross-examination of plaintiff with respect to the apparent conditional nature of his bid,[6] the court sustained an objection by plaintiff’s counsel asserting that evidence of any reasons for rejection of the bid other than copy cost was inadmissible because “none were ever given for the rejection of the bid, and none are pled in the defendant’s answer, and I don’t want this testimony to broaden the pleadings.” This ruling overlooked plaintiff’s burden which included proving the fact that his bid was not only the lowest *477 but also that it was responsive to the specifications. See LSA-R.S. 39:1594(G). The petition alleges as much, as it must, in order to support the relief plaintiff sought. The learned trial court relied on Haughton Elevator v. State Division of Administration, 367 So.2d 1161 (La.1979) and LSA-R.S. 39:1594(E) (prohibiting evaluation of bids based upon criteria not included in the bid invitation). In Haughton the low bidder was disqualified after the State determined it was not a responsible bidder from facts outside the bid proposal. The Supreme Court said this was improper and that Haughton (the low bidder) had to be given a hearing and an opportunity to respond before its bid could be rejected, and remanded the case. The distinction at bar is manifest: here the bid solicitation was cancelled because criteria from the bid invitation made it impossible to evaluate the bids pursuant to LSA-R.S. 39:1594(E). The record reveals that a determination as to the lowest bid was never made and, in fact, could not be made without reference to copy usage figures which were not in the specifications. Only one of the three departments at CHNO specified how many copies per report were required, but even that department did not specify a total number. Plaintiff asserts that only this one department’s copy usage can be considered. The record is abundantly clear that all three departments needed copies and plaintiffs position would require us to close our eyes to this fact as well as the fact that if the contract were awarded to plaintiff, these copies were not going to be free.
Livingston testified she could not obtain copy usage figures because CHNO did not maintain a record of copy usage (presumably because CHNO was not billed for copies under the existing contract). Livingston requested copy usage figures from plaintiff’s opponent, the incumbent contractor, Dictation. The correspondence providing these figures indicates that Dictation opposed rebidding because these figures indicated its bid was lower. Livingston testified she could not base an award on these figures because they were outside the bid invitation.
Deborah A. Rogers, Livingston’s supervisor, testified similarly that it was impossible to make a determination as to the lowest bid. Additionally, she testified that it was not at all uncommon to cancel a bid after the bid opening if it became apparent that there was a problem with the specifications. She estimated that such action is taken regularly, eight to ten times a month.
Hugh M. Carleton, Director of the State Purchasing Office, had the authority to cancel the bid. See LSA-R.S. 39:1599. Carleton testified that he interpreted the cancellation provision of the Procurement Code[7] as requiring “cogent and compelling reasons to believe it is in Louisiana’s best interests.” Reading the appropriate purchasing regulations into the record,[8] Carle-ton testified that he based his decision to cancel on the fact that “the solicitation did not provide for consideration of all factors of significant costs,” and that “ambiguous or otherwise inadequate specifications were part of the solicitation,” section 5, subsections D and C, respectively.
LSA-R.S. 39:1594(E) provides, in part, that criteria outside the bid invitation cannot be used in bid evaluation. Every state official involved in the decision to cancel this bid testified that a determination of the low bid was impossible without reference to information outside the bid specifications.
The trial court’s written reasons for judgment recite that the findings of fact are based upon a “credibility determination” and that the testimony of Stiegler and Paul Wells, the owner of Dictation, “cause the court to believe that the ‘copy cost’ issue was simply an excuse to avoid the public bid law.” There is evidence that Stiegler did in fact approach Carleton in an effort to have the contract reclassified so as to avoid the public bidding requirements. In addition, the record indicates *478 that Stiegler did not endeavor to revise the specifications with any haste, leading the trial court to conclude as follows:
If Mr. Stiegler were really concerned about the additional copies and the cost to Charity Hospital he should have talked to the two people involved within a matter of a few hours and had the contract rebid in less than thirty days. The lack of concern over premium prices for the interim contract, the delay in providing specifications and the request to remove transcription from the bid law can lead to only one conclusion. The Court, therefore, concludes that the bids were improperly rejected and that the contract should have been awarded to Ronald Roe d/b/a Transcription Unlimited.
The error in this reasoning is that Carle-ton, in his capacity as Director of Purchasing, made the determination to cancel the bids. There is no evidence that Stiegler was involved in this decision in any way. Moreover, the standard for judicial review of such a determination is whether it is arbitrary. Coney, 385 So.2d at 372.
In Coney the court upheld an agency determination to reject all bids when there was merely a gross disparity between the bids, noting that the bulk of the jurisprudence supports “the general proposition that a public entity has the right to reject any and all bids.” Id. at 373.
In Daves Insurance Agency v. State Division of Administration, 488 So.2d 705 (La.App. 1st Cir.), writ denied, 489 So.2d 236 (1986), this court determined that rejection of all bids because all the bids exceeded the amount of funds allocated for the contract was appropriate. See also DOTD v. Standard Construction Co., 550 So.2d 1327 (La.App. 1st Cir.1989).
A reading of the record, mindful of the provisions of LSA-R.S. 39:1594, cannot support the finding that the contract could have been awarded to plaintiff. A determination as to which of the two bids was the lower simply cannot be made. Under these circumstances the decision to cancel the bid solicitation and revise the specifications was not arbitrary.
For the reasons expressed above, the judgment of the trial court is reversed, and plaintiff’s suit is dismissed. All costs are taxed to plaintiff.
REVERSED AND RENDERED.

. This appears to be an error inasmuch as the bid invitation specified transcription services, and the record reveals that transcription services were, in fact, needed.

. By a supplemental and amending petition filed November 7, 1982, plaintiff asserts that the contract term for the bid proposal had expired and that therefore only monetary damages would provide adequate remedy. The bid opening date was March 9, 1982. The contract period was one year.

. The original and one copy were to be provided within the standard price. The bid price of “.30⅜” appears to have been intended to read either ".30" or “30e.”

. Plaintiff typed on the bid proposal form the following:
“ * * This bid price dependent upon acceptance of our procedures submitted and attached. * * ”

. The bid proposal allowed four additional copies at no additional charge. The record reveals that none of the departments at CHNO normally required more than four additional copies.

. See note 4, supra.

. LSA-R.S. 39:1551 through 1755.

. Defendant did not introduce the Purchasing Office’s internal regulations into evidence.